IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2019 Term

No. 18-0708

**FILED**
**April 11, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

In re T.S.

Appeal from the Circuit Court of Preston County
The Honorable Steven L. Shaffer, Judge
Civil Action No. 17-JA-6

REVERSED AND REMANDED
WITH DIRECTIONS

Submitted: March 12, 2019
Filed: April 11, 2019

Justin Gregory, Esq.
J. Gregory Law Firm, L.C.
Oakland, Maryland
Counsel for the Petitioner R.S.

Richard Gutmann, Esq.
Morgantown, West Virginia
Guardian ad Litem

Patrick Morrisey, Esq.
Attorney General
Brandolyn N. Felton-Ernest, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the Respondent
Department of Health and Human
Resources

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.    "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

2.    "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

3.    "West Virginia Code, Chapter 49, Article [4], Section [601 (2015)], as amended, and the Due Process Clauses of the West Virginia and United States Constitutions

i

prohibit a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of his child, without notice and the opportunity for a meaningful hearing." Syl. Pt. 2, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

WORKMAN, Justice:

This case is before the Court upon the appeal of the petitioner, R.S.,[1] the father of son, T.S., and the stepfather of stepdaughter, V.A.,[2] from the July 9, 2018, dispositional order entered by the Circuit Court of Preston County, West Virginia, granting the petitioner a disposition pursuant to West Virginia Code § 49-4-604(b)(5) (Supp. 2018),[3] in which parental rights are not terminated, but the child is placed in the "care, custody, and control" of a guardian, after determining that the petitioner was "unwilling or unable to provide adequately" for the needs of either child. Pursuant to this disposition, the circuit court placed the children, T.S. and V.A., in the "legal and physical custody" of the guardians, J.H. and T.H.,V.A.'s nonabusing, biological father and stepmother. The petitioner assigns several errors but we only address whether the circuit court erred when it determined disposition regarding his child without first allowing him a meaningful opportunity to be heard at the

---

[1]Because this case involves sensitive facts, we protect the identities of those involved by using only the parties' initials. *See State ex rel. W. Va. Dep't of Human Servs. v. Cheryl M.*, 177 W. Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987); *see also* W. Va. R. App. P. 40.

[2]V.A. is not at issue in this appeal.

[3]West Virginia Code § 49-4-604(b)(5) provides, in pertinent part:

> 5) Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court. . . .

1

dispositional hearing. Upon review of the parties' briefs and arguments,[4] the appendix record, and all other matters submitted before the Court, we reverse the circuit court's decision on this issue, and remand the case to the circuit court for the limited purpose of providing the petitioner the opportunity to both testify and present evidence at a dispositional hearing.[5]

## I. Facts and Procedural History

On January 27, 2017, the DHHR filed an "Imminent Danger Petition" against the petitioner and the mother, J.S., alleging that the pair had exposed V.A., who is ten years old, and T.S., who is six years old, to domestic violence in the home. The allegations

---

[4]Only the Department of Health and Human Resources ("the DHHR") complied with Rule 11(j) of the West Virginia Rules of Appellate Procedure by submitting a status update on the children within one week of oral argument. We caution that Rule 11(j) expressly applies to "all parties" in an abuse and neglect appeal.

[5]Because of our decision to reverse the case, we need not address the petitioner's other assigned errors, which included: 1) whether the circuit court erred in imposing disposition pursuant to West Virginia Code § 49-4-604(b)(5) when the conditions of abuse and neglect had been corrected prior to the dispositional hearing; 2) whether the circuit court failed to take evidence to determine whether the petitioner had successfully completed his improvement periods in this matter; 3) whether the circuit court erred in imposing disposition pursuant to West Virginia Code § 49-4-604(b)(5) with regard to T.S. when the circuit court never found that T.S. had been abused and neglected due to the actions of the petitioner; 4) whether the circuit court erred when it placed T.S. in the legal and physical custody of persons of no blood relationship to T.S., out of state, and without the benefit of a home study; and, 5) whether the circuit court erred in denying the petitioner's request for a dispositional improvement period, as a meaningful attempt at family counseling is in the best interests of the children. With regard to the petitioner's last two assigned errors, he neither provided the Court with any citation to the appendix record nor legal authority to support either of these alleged errors. *See* W. Va. R. App. P. 10(c)(7).

stemmed from the petitioner and the mother being involved in a domestic dispute during which the mother told V.A. to call the police. V.A. reported that she saw the petitioner punch her mother in the face "causing bruises and marks" and that T.S. was present during the altercation. V.A. also reported that the petitioner sometimes called both her mother and her names like "bitch" and "asshole" and that she only felt safe in the home "sometimes." V.A. reported that she was interviewed by Child Protective Services ("C.P.S.") the prior month but was not truthful about the domestic violence in the home because her parents told her not to say anything. Both parents denied domestic violence in the home and later reported that V.A. had mental health issues and should not be believed. As for T.S., the DHHR alleged "upon information and belief, . . . [T.S.] was observed at the residence to be soiled with what was described to be coal dust; and very upset, . . . screaming and crying for the Respondent Mother who left him inside the residence with the door closed, which was emotionally harmful to said Child."[6] The allegations reflected that the DHHR tried to put a "Temporary Protection Plan" in place with the parents for the children's safety and the parents refused to cooperate. Further, the parents refused to provide any names of relatives for the temporary placement of the children.

An adjudicatory hearing was held on February 22, 2017, and counsel for both the petitioner and the mother each requested a pre-adjudicatory improvement period, which

---

[6]This allegation in the petition is unclear as to when this observation occurred and who observed T.S. in this condition.

the circuit court granted for a three-month period.[7]  After a hearing on May 30, 2017, at the end of the pre-adjudicatory improvement period, because the parties did not have any witnesses to call, the circuit court, after considering the arguments of counsel, determined that there were disputed factual issues that needed to be resolved at an adjudicatory hearing. The petitioner then requested that the adjudicatory hearing be "repurposed" into an evidentiary hearing on whether the pre-adjudicatory improvement period conditions had been successfully completed.  The circuit court granted the petitioner's request and set the matter for June 22, 2017.

The guardian ad litem ("GAL") filed an "Amended Imminent Danger Petition" on June 9, 2017.  The allegations in the amended petition were that the petitioner and the mother had subjected the children to medical abuse and neglect and to physical abuse.  The GAL alleged that prior to the abuse and neglect proceedings being instituted, the parents took the children to several physicians where the children were diagnosed with serious mental and physical maladies and that the diagnoses were based upon histories from the parents concerning behaviors claimed to have been exhibited by both V.A. and T.S.  These diagnoses resulted in the children being prescribed medications.  After the children were placed into

---

[7]Counsel for both the mother and the petitioner filed a joint motion for family counseling, which was granted by the circuit court.  The parties agreed that Sharon McMillen, who was the children's licensed clinical psychologist, would direct the family counseling ordered by the circuit court.

4

foster care, the children were seen by a physician at the request of DHHR and the physician determined that most of the children's medicines should be drastically reduced or discontinued. The doctor found that the children did not suffer from most of the diseases with which they had been diagnosed.[8] The amended petition also contained an allegation that after the case began, V.A. reported during a Child Advocacy Center interview that there was additional domestic violence committed by the petitioner on both the mother and children, which included hair pulling and hitting. Both parents continued to deny domestic violence.

At the adjudicatory hearing, the petitioner and the mother both signed stipulated adjudications in open court. The petitioner stipulated that

> the infant respondents have been exposed to neglect and/or abuse due to the following deficiencies:
>
> a.　He [the petitioner] admits that the DHHR, the Guardian ad Litem, and . . . [V.A.'s] therapist all have addressed concerns regarding the need for the Respondent Father to make therapeutic admissions during family counseling sessions, recognizing that his prior actions have traumatized . . . [V.A.].
> b.　He admits that . . . [V.A.] has suffered emotional harm due to his actions.

The petitioner also stated that the stipulated adjudication was in the best interest of his children. The circuit court, based upon the petitioner's stipulation, adjudicated him an

---

[8]For instance, T.S. had been diagnosed as being autistic; however, it was determined that he was not autistic, but delayed due to lack of sufficient stimulus.

"abusing and neglectful parent." The petitioner was granted a post-adjudicatory improvement period not to exceed six months.[9]

The case ultimately proceeded to a dispositional hearing.[10]  At the hearing, which was held on March 21, 2018, the mother requested that the circuit court accept a "Disposition 5," pursuant to West Virginia Code § 49-4-604(b)(5).[11] The DHHR, the Court-Appointed Special Advocate ("CASA") representative, and the GAL all agreed with the disposition.  During the remainder of the hearing, the DHHR called its witnesses, who testified regarding the petitioner's disposition, which included the testimony of Christine Christy, an outreach coordinator with Home Base, Inc., who had supervised visits between the children and the petitioner, and Sharon McMillen, the children's licensed clinical psychologist, who discussed the children's progress during therapy, as well as her interaction with the petitioner during a therapy session.

The dispositional hearing was continued to April 16, 2018.  At that time, the DHHR was allowed to proceed with its evidence with no time limitation being mentioned

[9]The petitioner's improvement period was later extended by the circuit court for an additional three months.

[10]The hearing was first scheduled for February 27, 2018, but was rescheduled at the DHHR's request.

[11]*See supra* note 3 (setting forth statutory language).

6

by the circuit court. The DHHR called, Carrie Poier, a CPS worker for the DHHR and the only witness to testify. Ms. Poier testified about the petitioner's progress with services offered by the DHHR, as well as the children's progress.[12]

Significantly, at the close of the DHHR's case, the circuit court asked the petitioner's counsel if he had any evidence to present to the court. The petitioner first wanted to call the CASA representative as a witness. When the circuit court asked what the CASA representative would testify to, the petitioner's counsel responded: "I'm not sure, Your Honor." The circuit court inquired whether the CASA representative was on the petitioner's witness list, and counsel advised that she was not on either the petitioner's or the DHHR's list. The circuit court denied the petitioner's request to call the CASA representative as a witness.

The petitioner's counsel then asked to call the petitioner to testify. The circuit court again asked the petitioner's counsel what his client would testify to and the petitioner's counsel responded: "To his participation and services, what he's learned, what he's willing to do and what he's been willing to do this entire time." The circuit court converted this statement into a "proffer" as it proceeded to decision on disposition, stating: "I've also heard

---

[12]The Court notes that neither the DHHR nor the GAL offered any evidence regarding the allegations contained within the GAL's amended petition concerning the parents taking the children to doctors and obtaining diagnoses and medicines that another doctor subsequently determined were unnecessary.

proffer that . . . [the petitioner] would tell the Court all the things he's willing to do, but I have to go by what's happened during the improvement period . . . ."[13] The circuit court then inquired of the petitioner's counsel as to the relief that the petitioner was seeking. The petitioner's counsel responded that he was asking for the case to be dismissed and that T.S. be returned to him as "[t]here has been nothing in her[e] where . . . [T.S.] suffered any trauma, whatsoever." The petitioner also sought a post-dispositional improvement period. The circuit court never asked the petitioner if he had other evidence to present or witnesses he would call to testify.

Instead, the circuit court proceeded to disposition, with the judge stating that he was on a "limited clock," that the hearing got started late, and that the court needed to get the case resolved as "my tenure as Senior Status Judge is going to end this week." The judge stated that if the case was not resolved, it would go on for many more months. Despite both the DHHR and the GAL seeking termination of the petitioner's parental rights, the circuit court refused to terminate the petitioner's parental rights, and instead proceeded to impose a disposition pursuant to West Virginia Code § 49-4-604(b)(5), finding that the petitioner was "unwilling or unable to provide adequately for the needs of either child." The circuit court further stated that because of the petitioner's lack of empathy and refusal to

---

[13]From our review of the hearing transcript, it is clear that the petitioner's counsel, in responding to the circuit court's question about what his client would testify about, did not intend his response to be a proffer.

8

acknowledge the trauma to V.A., there had been emotional harm to the children.  It is the circuit court's dispositional order entered on July 9, 2018, that forms the basis for the instant appeal.

## II.  Standard of Review

This Court applies the following standard of review to dispositional determinations made by the circuit court in abuse and neglect cases:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected.  These findings shall not be set aside by a reviewing court unless clearly erroneous.  A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.  However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).  Further, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."  Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).  It is under these standards that the Court  addresses the issues before it.

9

## III. Discussion

The dispositive issue raised by the petitioner is whether the circuit court erred when it divested him of his rights to parent his child without first allowing him a meaningful opportunity to be heard. The petitioner, relying on *In re Samantha M.*, 205 W. Va. 383, 518 S.E.2d 387 (1999), argues that

> 'this Court held in the case of *In re: Sutton*, 132 W. Va. 875, 53 S.E.2d 839 (1949), a parent could not be divested of his parental rights without notice and opportunity for a hearing when such parent was subject to the jurisdiction of the court and available for service of process; and any such hearing held divesting the parent of his rights to his child resulting in a decree, was void and of no effect. This is the undoubted law in this jurisdiction and elsewhere, mandated by our own as well as the Federal Constitution, and it operates to prevent the permanent termination of parental rights without according the full range of due process guarantees to the affected persons.'

205 W. Va. at 387, 518 S.E.2d at 391 (quoting *In re Willis*, 157 W. Va. 225, 239-40, 207 S.E.2d 129, 138 (1973)). The petitioner contends that he was prevented from putting on his own case at the dispositional hearing as he was not permitted to call the CASA representative, was not allowed to testify on his own behalf, and was not permitted to present any other witnesses.[14] Conversely, both the DHHR and the GAL argue that the petitioner was represented by counsel at every hearing, and the DHHR also contends that his "counsel articulated arguments in his interest." These parties also argue that the circuit court

---

[14]The petitioner now claims that in addition to the CASA representative and his own testimony, he would have called Wesley Thorne, who was an outpatient therapist that provided counseling to the petitioner, the children's mother, and the children's guardian.

10

determined that there was no need for the petitioner to present witnesses in order for it to make its dispositional decision. As the DHHR contended, "[t]he court determined that there was not a need to call the additional witnesses based upon the proffer provided by Counsel for the Petitioner regarding the information that would be elicited through the testimony."

This Court held in *Willis* that

> West Virginia Code, Chapter 49, Article [4], Section [601 (2015)],[15] as amended, and the Due Process Clauses of the West Virginia and United States Constitutions prohibit a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of his child, without notice and the opportunity for a meaningful hearing.

157 W. Va. at 225, 207 S.E.2d at 130, Syl. Pt. 2 (footnote added). Further, West Virginia Code § 49-4-601(h) expressly provides:

> In any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child *shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses*. Foster parents, preadoptive parents, and relative caregivers shall also have a meaningful opportunity to be heard.

(Emphasis added).

*In State ex rel. H.S. v. Beane*, 240 W. Va. 643, 814 S.E.2d 660 (2018), this Court stated that "[p]arties having 'custodial or other parental rights or responsibilities' are

---

[15]Formerly W. Va. Code § 49-6-2 (2014).

11

entitled to *both* 'a meaningful opportunity to be heard' *and* 'the opportunity to testify and to present and cross-examine witnesses.' *See* W. Va. Code § 49-4-601(h)." 240 W. Va. at 647, 814 S.E.2d at 664; *see also State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 739, 815 S.E.2d 540, 550 (2018) ("In view of the fact that *Jonathan G.* pre-dates our current statutory right of foster parents to be heard, it is necessary to clarify the continued vitality and scope of its holding. As indicated, when *Jonathan G.* was authored, the counterpart to our current 'right to be heard' statute *provided that seemingly full participation was afforded to those with 'custodial or other parental rights or responsibilities*[.]' W. Va. Code § 49-6-2.") (emphasis added); *In re Jonathon G.*, 198 W. Va. 716, 727, 482 S.E.2d 893, 904 (1996) (stating that statutory right of party or parties having custody of child to meaningful opportunity to be heard in abuse and neglect proceeding, including opportunity to testify and present and cross-examine witnesses).

Both our statutory and case law unequivocally require that parents, or any party having custodial or other parental rights and responsibilities, be afforded a meaningful opportunity to be heard. This necessarily includes the right to testify and to present witnesses, as well as to cross-examine witnesses in any abuse and neglect proceeding. *State ex rel. H.S.*, 240 W. Va. at 647, 814 S.E.2d at 664; W. Va. Code § 49-4-601(h). In this case, even though the petitioner was represented by counsel, the circuit court denied him the opportunity to testify and to present witnesses at the dispositional hearing in clear contradiction of our law.

We, therefore, reverse and remand the case to the circuit court for the limited purpose of affording the petitioner an opportunity to be heard at the dispositional hearing, which he had previously been denied by the circuit court. Because the DHHR was given the opportunity to present its entire case concerning the petitioner's disposition and because the petitioner was allowed a full and complete opportunity to cross-examine those witnesses, the circuit court, upon remand, need not require the DHHR to again present its witnesses as it may rely upon the complete transcripts of the earlier dispositional hearings. The petitioner, however, must be afforded a full and complete opportunity to present witnesses and to testify on his own behalf. If there is a need that arises from the petitioner's presentation of evidence that calls for rebuttal evidence to be presented by the DHHR or the GAL, the circuit court should allow that to occur before deciding disposition for the petitioner.

## IV. Conclusion

Accordingly, we reverse the circuit court's July 9, 2018, order, and we remand the case to the circuit court for a dispositional hearing that comports with this opinion.

Reversed and remanded
with directions.

13