# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* T.S.

No. 19-0863 (Preston County 17-JA-6)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.S., by counsel Justin Gregory, appeals the Circuit Court of Preston County's September 4, 2019, order terminating his parental, custodial, and guardianship rights to T.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Richard M. Gutmann, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental, custodial, and guardianship rights and failing to take evidence to determine whether he successfully completed his improvement periods.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner asserts two additional assignments of error on appeal. However, in support of both of these assignments of error, petitioner fails to cite to any applicable authority in support of his arguments. At best, petitioner generally asserts in relation to one of the assignments of error that the circuit court "failed to comply with the provisions under the Interstate Compact for the Placement of Children and the Uniform Custody Jurisdiction and Enforcement Act." However, petitioner fails to include citations to either statute or, more specifically, cite to any specific provision of either statute that was allegedly disregarded. This blanket assertion without specific citation to authority is insufficient. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . . [and] must contain appropriate and specific citations to the record on appeal . . . .

(continued . . . )

1

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The facts relevant to petitioner's current appeal were largely laid out in his prior appeal to this Court. *See In re T.S.*, 241 W. Va. 559, 827 S.E.2d 29 (2019). In January of 2017, the DHHR initiated abuse and neglect proceedings against petitioner upon allegations of domestic violence in the home. *Id*. at 30-31, 827 S.E.2d at 560-61. According to the DHHR, V.A.—another child in the home who is not at issue on appeal—witnessed petitioner "punch her mother in the face 'causing bruises and marks,'" among other allegations. *Id*. at 31, 827 S.E.2d at 561. V.A. gave other detailed statements regarding the domestic violence in the home. *Id*. As to T.S., the DHHR alleged that he was home during the domestic violence and was observed to be distressed and covered in coal dust, which the DHHR alleged was emotionally harmful. *Id*. When the DHHR attempted to implement a temporary protection plan for the children, both parents refused to cooperate or otherwise name a relative with whom the children could be placed. *Id*.

The record shows that the circuit court granted petitioner a preadjudicatory improvement period. At the conclusion of this improvement period, despite the fact that the circuit court held a hearing and "the parties did not have any witnesses to call," petitioner later asked that "the adjudicatory hearing be 'repurposed' into an evidentiary hearing" to determine if his preadjudicatory improvement period was successfully completed. *Id*. The circuit court granted that request and set the matter for a hearing on June 22, 2017.

Before the hearing convened, the guardian filed an amended petition alleging that petitioner and the mother "subjected the children to medical abuse and neglect and to physical

---

The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioner's brief in regard to these two additional assignments of error is inadequate as it fails to comply with Rule 10(c)(7) and our December 10, 2012, administrative order. Accordingly, the Court will not address these assignments of error on appeal.

abuse." *Id*. Essentially, the allegations concerned the parents providing medical histories of the children's alleged behaviors in order to obtain diagnoses and medications for both children that, once the children were placed in foster care, were deemed inaccurate and unnecessary. *Id*. According to the record on appeal in this matter, as a result of the parents' descriptions to medical professionals, T.S. was diagnosed, among many other things, as autistic. The record further shows that both children were unnecessarily prescribed multiple medications, including antipsychotic drugs. According to the amended petition, the parents "sought out diagnoses for the children in order to reduce the children's energy levels and to provide income," as the petition further alleged that "due to T.S.'s diagnosis of autism, the [parents] were able to secure a large award from the State of West Virginia, which allowed the [parents] to purchase the family home." Again, as noted above, once removed from petitioner's care, medical personnel determined that "the children did not suffer from most of the diseases with which they had been diagnosed" and "most of the children's medicines [were] drastically reduced or discontinued." *Id*. Further, the amended petition included new disclosures by V.A. regarding petitioner's physical abuse of both children. *Id*.

On June 22, 2017, the circuit court held an evidentiary hearing "in order to determine the question of whether the [parents] had successfully completed their respective improvement periods." According to the order on appeal in this matter, the circuit court heard testimony from the children's psychologist and found that neither parent had successfully completed their improvement period.[3]

At the subsequent adjudicatory hearing, petitioner stipulated that

the infant respondents have been exposed to neglect and/or abuse due to the following deficiencies:

a. He [the petitioner] admits that the DHHR, the Guardian ad Litem, and . . . [V.A.'s] therapist all have addressed concerns regarding the need for [petitioner] to make therapeutic admissions during family counseling sessions, recognizing that his prior actions have traumatized . . . [V.A.].

b. He admits that . . . [V.A.] has suffered emotional harm due to his actions.

*Id*. at 561-62, 827 S.E.2d at 31-32. As such, petitioner was adjudicated as an abusing parent and granted a post-adjudicatory improvement period. Petitioner agreed to participate in services "to alleviate and improve his areas of deficiencies" set forth in his stipulation, including that he continue with domestic violence courses, among other services.

---

[3]The order on appeal further indicates that, "[a]lthough the [c]ourt held an evidentiary hearing on the record, no order was entered" in regard to the June 22, 2017, hearing.

Thereafter, the matter proceeded to a series of dispositional hearings during which the circuit court also heard petitioner's motion for an extension of his post-adjudicatory improvement period. During the hearings, the DHHR presented testimony from its employees that provided petitioner with services throughout the proceedings and the children's psychologist. At the close of the DHHR's case, the circuit court did not permit petitioner to call a specific witness or to testify himself. *Id*. at 562, 827 S.E.2d at 32. Petitioner appealed the circuit court's subsequent dispositional order and, based certain procedural issues, this Court remanded the matter with instructions to forthwith hold a new dispositional hearing for the limited purpose of affording petitioner "a full and complete opportunity to present witnesses and to testify on his own behalf." *Id*. at 565, 827 S.E.2d at 35.

Upon remand, the circuit court held a dispositional hearing in July of 2019 in compliance with this Court's directives. During the hearing, petitioner presented testimony from the children's psychologist, his therapist, a DHHR employee, and himself. Based upon the evidence presented,[4] the circuit court found that, "[t]hroughout the case, [the parents] have denied that any domestic violence occurred in the home." This was in spite of V.A.'s consistent, detailed disclosures of witnessing domestic violence in the home, in addition to her disclosures of physical abuse of the children. Further, the children's therapist testified that she witnessed bruising to the mother's face and that, based on her interactions with the child, she believed that "V.A. suffered significant domestic violence" in the home. In fact, given how traumatic petitioner's abuse of V.A. was, the multidisciplinary team had to develop a schedule for how the mother would arrive at the psychologist's office with V.A. in order to keep the child from seeing petitioner. Despite this instruction, the mother nonetheless brought petitioner with her to one of her sessions and, when questioned as to why she brought petitioner with her, indicated that she "didn't have a choice, that [petitioner] had threatened to shoot himself" if the mother did not bring him.

During petitioner's meeting with the psychologist, he was confronted with V.A.'s specific disclosures of domestic violence in the home but "continually shook his head and denied that the incidents occurred." More specifically, petitioner "denied that he and his wife were involved in any activity which would have caused V.A. emotional harm." According to the psychologist, the session with petitioner caused V.A. to regress in her own therapy. The psychologist did not continue therapy with petitioner "because she did not believe that any progress could be made." Although the psychologist indicated that petitioner did not specifically need to admit that domestic violence occurred in the home, she did say that he needed to "be able to demonstrate empathy to the point that it could be productive for [V.A.] to meet with him without being shut down emotionally and in her recovery." Petitioner's therapist also testified

---

[4]Some of the evidence cited in the order on appeal is taken from the earlier dispositional hearings that occurred prior to petitioner's first appeal. This is in keeping with this Court's instruction that "the circuit court, upon remand, need not require the DHHR to again present its witnesses as it may rely upon the complete transcripts of the earlier dispositional hearings." *T.S.*, 241 W. Va. at 564-65, 827 S.E.2d at 34-35.

that petitioner "stated he was attending therapy because of a Child Protective Services referral that involved domestic violence but . . . denied engaging in any domestic violence."

An individual who provided petitioner with services, including individualized parenting education, adult life skills education, and supervised visitation, testified to her involvement in petitioner's improvement period. Although the provider reported that petitioner was compliant with services, the provider testified that he denied any domestic violence in the home and that, because of his failure to "admit to [his] role in the case," petitioner did not receive a certificate for completing individualized parenting services. According to this provider, petitioner displayed controlling behavior during services, "which is a possible sign of domestic violence." Additionally, during one supervised visit, petitioner instructed V.A. to stop running. The provider observed V.A. display a strong reaction to petitioner's request, including "cowering," "appearing scared," and stating that she did not "want to get [her] butt beat." Another DHHR employee testified that termination of petitioner's rights was recommended because he "refused to make therapeutic admissions" and that this failure, coupled with his failure to "acknowledge any issues regarding domestic violence during the improvement period meant that he was unable to correct the issues in the home." Multiple witnesses also testified that "goodbye" or "closure" visits were scheduled for the parents with the children following the initial disposition that petitioner previously appealed. According to the witnesses, petitioner did not attend these visits with the children, despite the DHHR's rescheduling them several times and contacting petitioner by phone to ensure he attend. A DHHR employee further testified that petitioner had not contacted the DHHR to inquire about the children since March of 2018.

Petitioner testified and, essentially, denied any domestic violence, physical abuse, or inappropriate discipline in the home. In response to whether he would be willing to continue family therapy, petitioner testified that "he did not see a point in continuing therapy." Petitioner also indicated that he and the mother remained married and cohabitating. Given that the mother was barred from having custody of the children by virtue of her prior disposition under West Virginia Code § 49-4-604(b)(5) (2019),[5] petitioner was questioned as to whether he understood that the children could not live in the home as long as the mother remained there. Petitioner responded, "Why? She's my wife." Most importantly, petitioner testified that he did not recall doing anything that would cause V.A. emotional harm. Petitioner argued that he complied with all services below and that his successful compliance required T.S.'s return to his custody.

Ultimately, the circuit court found that petitioner stipulated to his need to make therapeutic admissions to his conduct and its impact on the children in order to remedy the conditions of abuse and neglect, yet "[d]espite [his] official acknowledgements, throughout the improvement period, [petitioner] refused to admit to any of the issues that led to the case." Because petitioner denied any domestic violence occurred in the home or that any incidents occurred that may have caused V.A. to suffer emotional harm, he failed to acknowledge the issues giving rise to the case. According to the circuit court, this resulted in the conditions being

---

[5]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

untreatable. Further, this evidenced petitioner's failure to "demonstrate any change in attitude, acceptance of responsibility . . . , or any change that would lead the [c]ourt to believe that T.S. would be safe" if returned to his custody. The circuit court additionally held that it "previously found that [petitioner] did not successfully complete his improvement period" and that "any further provision of services would be an exercise in futility because at the most basic level, [petitioner] refuses to acknowledge any deficiencies in his parenting." In finding that termination of petitioner's parental, custodial, and guardianship rights was in the child's best interest, the circuit court noted that T.S. indicated that he did not wish to have contact with petitioner and that the child was well bonded with his sibling and guardians. Further, petitioner had not seen the child for over a year, and the circuit court found that disrupting his placement would be detrimental to his wellbeing. As such, the circuit court terminated petitioner's parental, custodial, and guardianship rights to T.S.[6] It is from the September 16, 2019, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights because the DHHR stipulated that he was compliant with services and a service provider testified that he completed all the goals of his services, with the exception of admitting that domestic violence occurred in the home. As such, he asserts that the conditions of abuse and neglect at issue were corrected by the time of the dispositional hearing. Further, petitioner alleges that the DHHR did not make reasonable efforts to provide him with necessary services. According to petitioner, despite the circuit court's order that the DHHR facilitate family counseling as soon as

---

[6]The mother's parental rights to T.S. remain intact as the circuit court imposed disposition in regard to her pursuant to West Virginia Code § 49-4-604(b)(5) (2019) by transferring legal and physical custody to the father of V.A. According to respondents, the permanency plan for the child is to remain in that home under a legal guardianship.

possible, the DHHR waited over ten months to begin family counseling with him. Petitioner further argues that the family counseling he did receive lasted only one hour and that, within that hour, he was required to "do what the DHHR wanted him to do" over the course of his entire improvement periods that lasted more than one year. Upon our review, we find no merit to this assignment of error.

First, the record is clear that petitioner did not attain all the goals of his improvement period nor did he correct the conditions of abuse and neglect at issue. On appeal, petitioner seeks to complicate what is an incredibly straightforward set of circumstances. Pursuant to his stipulation at adjudication, petitioner admitted that he abused and/or neglected the children by virtue of the fact that his actions caused V.A. emotional harm and that he needed "to make therapeutic admissions" to this conduct in order to facilitate the children's wellbeing. Regardless of any compliance petitioner exhibited with other terms and conditions of his improvement periods, the record could not more clearly demonstrate that the one thing petitioner was unwilling to do was the most important thing asked of him: make therapeutic admissions to the impact of his conduct.

Further, petitioner's argument about the delay in family therapy is disingenuous, as it ignores the practical reasons for the delay. The child's psychologist testified extensively about the delays caused by beginning therapy with V.A. to ensure that the child was comfortable discussing her abuse. Clear from the record is the fact that the child's therapy was scheduled according to her ability to appropriately process petitioner's abuse, and we find no error in the fact that it did not progress as quickly as petitioner demanded. Petitioner's argument also ignores the fact that his own conduct and refusal to cooperate frustrated the process, leading to further delays. As an example, the psychologist scheduled an early session between V.A. and her mother that petitioner was not invited to attend because of the potential impact on the child; nonetheless, petitioner appeared. Further, because of petitioner's past denials of his conduct, the psychologist testified that she decided to forego having petitioner and the child go over V.A.'s disclosures together. Instead, the psychologist addressed this with petitioner outside of the child's presence because "there was too much of a risk of upsetting rather than helping" the child should petitioner continue to accuse her of lying. This therapy session was intended as "[t]he first stage" of the process, wherein petitioner would need to "admit responsibility and [his] role of causing the trauma for the child, and then to apologize." However, instead of "verbaliz[ing] . . . any sense of wrongdoing" in order to support V.A. and allow her to process his abuse, petitioner instead denied all wrongdoing. According to the therapist, in light of petitioner's refusal to meet this minimal requirement, there was no possible way that petitioner could make any progress in therapy with V.A. In fact, the therapist testified that such therapy could have been detrimental to the child by virtue of exposing her to petitioner's negativity. What this evidence shows is that the reason petitioner's family therapy sessions lasted only one hour, in total, is because petitioner refused to meet the most basic requirement of the therapy and, crucially, the entire proceedings below.

Based on the extensive evidence set forth above, we agree with the circuit court that petitioner displayed a total failure to acknowledge the conditions of abuse and neglect at issue. As this Court established,

7

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given that the record overwhelmingly shows that petitioner repeatedly failed to acknowledge the conditions of abuse and neglect at issue, it is clear that his assertion that he remedied those conditions is without merit. Indeed, the circuit court specifically found that petitioner not only failed to remedy the conditions of abuse and neglect but that there was no reasonable likelihood he could do so in the future. This was based, in part, upon his failure to even acknowledge the issues. Further, because the conditions persisted, the circuit court found that the child's welfare required that petitioner's parental rights be terminated. We agree, and note that West Virginia Code § 49-4-604(b)(6) (2019) permits circuit courts to terminate parental rights upon these findings. Additionally, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, it is clear that the circuit court did not err in terminating petitioner's parental rights.

Finally, the Court finds no merit to petitioner's argument that the circuit court erred in failing to take evidence to determine whether he successfully completed his improvement period. According to petitioner, he twice requested the circuit court "to allow an evidentiary hearing to determine whether [he] had satisfied the conditions of the improvement period and whether he had made sufficient improvement to justify the return of his child." This argument simply has no basis in the record or applicable authority. As set forth above, the circuit court not only held a hearing in June of 2017 "to determine the question of whether the [parents] had successfully completed their respective improvement periods," but it also took extensive evidence at multiple dispositional hearings on this exact issue. Petitioner seeks to impose a duty on the circuit court to hold a hearing for no purpose *other* than to reach a determination as to his success in his improvement periods, but he cites to no rule, statute, or other authority imposing such a duty.

Petitioner is correct that this Court has held that

> "[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the

8

improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child." Syl. Pt. 6, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

*In re J.G.*, 240 W. Va. 194, 809 S.E.2d 453 (2018). This case, however, does not preclude a circuit court from taking such evidence at a hearing convened for another purpose, such as a dispositional hearing. As set forth above, the circuit court took extensive evidence at multiple dispositional hearings to determine whether petitioner complied with services sufficiently to justify the child's return to his care. Ultimately, however, the circuit court found that petitioner had not corrected the conditions of abuse and neglect and that returning the child to his care would be contrary to the child's best interests. As such, it is clear that petitioner's assignment of error is without merit.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 4, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison