IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

_____

No. 21-0596

_____

**FILED**

**October 7, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE: A.G.

_____

Appeal from the Circuit Court of Berkeley County
The Honorable Bridget Cohee, Judge
Civil Action No. 20-JA-26

VACATED AND REMANDED

_____

Submitted: September 7, 2022
Filed: October 7, 2022

Nancy A. Dalby, Esq.
Shepherdstown, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
Michael R. Williams, Esq.
Senior Deputy Solicitor General
Brittany Ryers-Hindbaugh, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent Department of
Health and Human Resources

Tracy Weese, Esq.
Shepherdstown, West Virginia
Guardian *Ad Litem*

JUSTICE ARMSTEAD delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected.  These findings shall not be set aside by a reviewing court unless clearly erroneous.  A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.  However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety."  Syl. Pt. 1, *In Int. of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

2.      West Virginia Code § 49-4-601 (eff. 2019), as amended, and the Due Process Clauses of the West Virginia and United States Constitutions prohibit a court from determining "whether [a] child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent," without notice to the respondent that an adjudicatory hearing will be held and that such hearing will be held to adjudicate that respondent. Without such notice, the respondent has not received an adjudicatory hearing or due process of law.  W. Va. Code § 49-4-601(i).

i

**Armstead, Justice:**

The Circuit Court of Berkeley County terminated the parental rights of Petitioner, A.G.-2, for allegedly abandoning his infant son, A.G.-1.[1] On appeal, A.G.-2 argues that he was never properly adjudicated as an abusing or neglecting parent and that the evidence did not support an abandonment finding. Based on the record before us, the arguments of the parties, and the applicable law, we find that the circuit court erred when it terminated A.G.-2's parental rights because A.G.-2 did not receive proper notice of the hearing at which he was purportedly adjudicated. Therefore, we vacate the circuit court's adjudicatory and dispositional orders in this matter and remand this case to the circuit court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A.G.-1 was born in June 2018. His father is A.G.-2, and his mother is K.C. The mother and her boyfriend, Z.S., each have children from other relationships. In January 2020, DHHR received a referral regarding the mother and the boyfriend. After investigation, DHHR filed a February 2020 petition charging the mother and the boyfriend with abuse and neglect due to drug abuse and domestic violence. A.G.-1 was placed in foster care.

---

[1] In cases involving sensitive facts, we use initials to identify the parties. *See* W. Va. R. App. P. 40(e) [eff. 2022]; *see also State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990). Additionally, because the child and his father share the same initials, we will refer to them as A.G.-1 and A.G.-2, respectively, throughout this opinion.

1

The petition also charged A.G.-2 "and/or Unknown Father" with abandoning A.G.-1 and leaving him without basic necessities. The case style identified A.G.-2 as the "Putative Father." It identified "UNKNOWN" as the "Biological Father" of A.G.-1. Each nominal father was assigned separate counsel. A.G.-2 appeared for the preliminary hearing by phone and requested a paternity test.

The circuit court adjudicated the mother and the boyfriend over the course of two hearings in July and August 2020. A.G.-2 did not appear for either hearing, and the order from the hearing adjudicated neither A.G.-2 nor Unknown Father. Instead, the order set a September 2020 hearing for disposition regarding the mother and the boyfriend. According to the order, the September 2020 hearing would also be "a status hearing on paternity testing for [A.G.-2.]"

A.G.-2 did not appear for the September 2020 hearing, though he was represented by counsel. The mother and the boyfriend also failed to appear. The circuit judge directed the bailiff to call in the hallway for the mother and the boyfriend. The circuit judge did not direct the bailiff to call for A.G.-2. During the hearing, a DHHR case worker testified that A.G.-2 had twice failed to appear for paternity testing. The worker also testified that the mother said she had been with multiple men when A.G.-1 was conceived. Another witness, however, testified that A.G.-2 was the only person considered to be the likely father and that A.G.-2 "was never interested" in being a father to A.G.-1. After hearing these witnesses, the guardian *ad litem* asked the court to find that *A.G.-2* had abandoned the child. A.G.-2's attorney did not object, and the circuit court found from the

2

bench that "if [A.G.-2] is indeed the father, or whoever is the father, the unknown father of [A.G.-1] has failed to come forward to provide in any way for [A.G.-1] and has abandoned all [his] rights."

The order from the September 2020 hearing indicates that it was called "for the adjudication of *Unknown Father*" (emphasis added) and for disposition regarding the mother and the boyfriend. The order notes that A.G.-2 and the Unknown Father were absent, that A.G.-2 failed to appear for paternity testing, and that no one claimed to be A.G.-1's father. It further found that the "biological father" abandoned the child. Nevertheless, the decretal portion of the order states only that "*Unknown Father* of Infant [A.G.-1] is adjudicated to have abused, neglected, and abandoned him." (Emphasis added.)

A.G.-2 appeared for a hearing in October 2020. The transcript of the hearing reflects some confusion about what had transpired at the September 2020 hearing. According to the circuit judge, the October 2020 hearing was for "the disposition of [A.G.-2], *Putative Father* of [A.G.-1]." (Emphasis added.) However, the prosecutor asserted that the hearing was for "disposition as to [A.G.-2] *as the unknown* [*father*] . . . ." (Emphasis added.) During the hearing, A.G.-2 testified that he lived with the mother during the first seven months of her pregnancy and that he had no reason to doubt that he is A.G.-1's father. Indeed, according to him, the mother had told him that he is the father. A.G.-2 testified that he returned to the home for several months after the child was born and remained there until he and the mother separated again. According to his testimony, he had not seen the child after that because "[t]hey pretty much kept him from me."

3

Regarding paternity testing, he testified that he received notice of the first paternity test days after he was scheduled to be tested and that he did not receive the second notice because he had moved. He reported that he had, however, remained in touch with his attorney during the case. The court ordered expedited paternity testing and continued the "disposition of Unknown Father . . . ."

In December 2020, paternity testing confirmed that A.G.-2 is A.G.-1's father. The circuit court subsequently entered an order dismissing "Unknown Father" and his attorney from the case, and A.G.-2 filed a written motion for a post-dispositional improvement period.

The court conducted dispositional hearings in February and March 2021. A.G.-2 testified at the March 2021 hearing that he "was with [his] son for a long time[,]" including "all Christmas" and for some time afterward. He claimed that he had remained in touch with the child after he and the mother parted ways and that he had provided support for the child until the mother "stole" one of his vehicles and presumably sold it. He testified, further, that the mother terminated contact out of fear that the boyfriend would harm her. A.G.-2's sister testified on behalf of A.G.-2 and lent some support to his claims that he had supported the child.

After hearing argument, including argument from A.G.-2's counsel that he was never properly adjudicated, the circuit court terminated A.G.-2's parental rights and denied his motion for post-termination visitation. The court found "no procedural error" regarding adjudication due to A.G.-2's failure to participate in the case and failure to

4

submit to paternity testing. According to the court, "[t]he adjudication of Unknown birth father of Infant [A.G.-1] applies to [A.G.-2,] and the facts supporting that adjudication have not changed."

A.G.-2 appeals from the circuit court's dispositional order entered on June 29, 2021.

## II. STANDARD OF REVIEW

"In an abuse and neglect case, we give deference to the circuit court's factual findings and conduct an independent review of questions of law[.]" *In re S.C.*, 245 W. Va. 677, 686, 865 S.E.2d 79, 88 (2021). As we have explained in greater detail,

> [a]lthough conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, *In Int. of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). With this standard of review in mind, we will consider A.G.-2's appeal.

5

## III. ANALYSIS

A.G.-2 proposes two assignments of error, both of which amount to a claim that he was denied an adjudicatory hearing. He objects that he "received no notice that the [September 2020] adjudicatory hearing for the Unknown Father was a hearing for him" and that "[t]here was nothing to notify the Petitioner that this was his opportunity to present his case against abandonment." According to A.G.-2, the circuit court's failure "to hold an adjudicatory hearing of which [he] had notice and [at which he had] a meaningful opportunity to be heard" deprived him of due process. We agree.[2]

An adjudicatory hearing is the hearing at which a circuit court determines "whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent[.]" W. Va. Code § 49-4-601(i) (eff. 2019); *see also* W. Va. R. P. Child Ab. & Negl. P. 3(a) [eff. 2019] (defining "[a]djudicatory hearing" as "the hearing contemplated by W. Va. Code § 49-4-601 to determine whether a child has been abused and/or neglected as alleged in the petition"). "In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person[.]" Syl. Pt. 1, in part, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973). Indeed, the parental right to custody "is a fundamental personal liberty protected and guaranteed by the Due

___

[2] A.G.-2 also objects that the circuit court adjudicated him without clear and convincing evidence that he had abandoned his son. We decline to address this argument because the lack of notice to A.G.-2 is dispositive.

6

Process Clauses of the West Virginia and United States Constitutions[,]" *id.*, and a right

that we have described as "preeminent[,]" *id.* at 237, 207 S.E.2d at 137.

A parent's right to custody, however, "is not absolute" and "may be limited

or terminated by the State, as Parens patriae, *if the parent is proved unfit to be entrusted*

*with child care.*" *Id.* at 225, 207 S.E.2d at 131, syl. pt. 5, in part (emphasis added). As we

explained in *Willis*,

> The doctrine of Parens patriae, subsisting since feudal times
> and well documented in the common law of England, Virginia,
> and this State, accords the State rights just below that of the
> natural parent in the health and welfare of minor children. For
> the protection of the child, the State has always moved
> expeditiously and decisively *when a natural parent has been*
> *proved to be unfit to continue the trust of raising his child,*
> *when a child has been abandoned by his natural parent* or
> when the parent, by agreement or otherwise, has permanently
> transferred, relinquished or surrendered the custody of such
> natural child.

*Id.* at 238, 207 S.E.2d at 137 (emphasis added). We emphasize, however, that "the state's

right to intervene is *predicated upon* its initial showing that there has been child abuse or

neglect, which constitutes unfitness on the part of the parents to continue, either

temporarily or permanently, in their custodial role." *State v. T.C.*, 172 W. Va. 47, 51, 303

S.E.2d 685, 690 (1983) (emphasis added).

Because the State's right to intervene turns on parental fitness, the

Legislature has crafted a "two-stage process" for abuse and neglect cases that begins with

adjudication under West Virginia Code § 49-4-601 and only then proceeds to disposition

under West Virginia Code § 49-4-604 (eff. 2020). *In re A.P.-1*, 241 W. Va. 688, 693, 827

7

S.E.2d 830, 835 (2019) (quoting *In re K.H.*, No. 18-0282, 2018 WL 6016722, at *4 (W. Va. Nov. 16, 2018) (memorandum decision)). Indeed, we have recognized that "jurisdictional and constitutional concerns mandate this two-phase approach[,]" *A.P.-1*, 241 W. Va. at 693, 827 S.E.2d at 835, and that an abuse or neglect "finding is a *prerequisite to further continuation of the case*[,]" *T.C.*, 172 W. Va. at 48, 303 S.E.2d at 686, syl. pt. 1, in part (emphasis added). Failure to make such a finding is "palpable error," *id.* at 52, 303 S.E.2d at 690, and deprives the circuit court of "continued jurisdiction to conduct a disposition hearing[,]" *A.P.-1*, 241 W. Va. at 695, 827 S.E.2d at 837.

We have long held that

>  " 'West Virginia Code, Chapter 49, Article [4], Section [601 (2015)], as amended, and the Due Process Clauses of the West Virginia and United States Constitutions prohibit a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of his child, *without notice and the opportunity for a meaningful hearing*.' Syl. Pt. 2, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973)." Syllabus Point 3, *In re T.S.*, 241 W. Va. 559, 827 S.E.2d 29 (2019).

*S.C.*, 245 W. Va. at 680, 865 S.E.2d at 82, syl. pt. 6 (emphasis added, other alterations in original). Additionally, by statute, every "party . . . having custodial or other parental rights or responsibilities to the child [must] be afforded a *meaningful* opportunity to be heard" at an adjudicatory hearing, "including the opportunity to testify and to present and cross-examine witnesses." W. Va. Code § 49-4-601(h) (emphasis added). We fail to see how a parent can be said to have received an adjudicatory hearing *at all*—much less "a meaningful opportunity to be heard" or an "opportunity to testify and to present and cross-

8

examine witnesses[,]" *id.*, without notice that an adjudicatory hearing is going to be *held* and that the hearing will adjudicate *his or her* alleged unfitness as a parent. Accordingly, it is clear that West Virginia Code § 49-4-601 (eff. 2019), as amended, and the Due Process Clauses of the West Virginia and United States Constitutions prohibit a court from determining "whether [a] child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent," without notice to the respondent that an adjudicatory hearing will be held and that such hearing will be held to adjudicate that respondent. Without such notice, the respondent has not received an adjudicatory hearing or due process of law. W. Va. Code § 49-4-601(i).

In this case, A.G.-2 plainly had notice that he was a respondent in an abuse and neglect case, but we find nothing in the record before us to indicate that A.G.-2 had any reason to know that the September 2020 hearing was an adjudicatory hearing, much less an adjudicatory hearing *for him*. On the contrary, the adjudicatory order for the mother and the boyfriend, which memorializes the outcome of the August 2020 hearing, provides that the parties were to return in September 2020 for *disposition* regarding the mother and the boyfriend and for "a *status hearing on paternity testing* for [A.G.-2]" (emphasis added).[3] Accordingly, we conclude that A.G.-2 did not receive proper notice that the September 2020 hearing was an adjudicatory hearing for him and that, without such notice,

---

[3] We find this description particularly relevant because the order from the August 2020 hearing was entered at 5:21 p.m. on the same day as the September 2020 hearing.

9

the September 2020 hearing could not and did not provide due process or function as an adjudicatory hearing.

The fact that the September 2020 hearing was not called for the purpose of adjudicating A.G.-2 is only confirmed by how the hearing began. At that time, Unknown Father was a named party with separate counsel who appeared for him at the hearing. When the prosecutor stated that the parties were assembled for "an adjudication of the unknown father" of A.G.-1, the circuit judge pointed out that *Unknown Father's* attorney was on the phone for the hearing. The judge did not also respond that A.G.-2's attorney was present or that A.G.-2 was absent. Indeed, although the judge directed the bailiff to check the hallway for the mother and the boyfriend, the judge did not also direct the bailiff to check for A.G.-2, who had previously appeared in the case. Thus, although the hearing later drifted into consideration of A.G.-2's alleged abandonment of the child, the hearing was not called for that purpose. The circuit court erred by conflating A.G.-2 (as the "Putative Father") with Unknown Father (as the "Biological Father") at a time when A.G.-2's paternity had not been established and when both parties, whether real or nominal, were represented by separate counsel.

We conclude, further, that without first holding an adjudicatory hearing, the circuit court could not lawfully proceed to disposition and termination of A.G.-2's parental rights. Again, our law is clear that "a circuit court may not terminate parental rights at a § 49-4-604 disposition hearing without first finding that the parent abused or neglected the

10

child in question at a § 49-4-601 adjudicatory hearing." *A.P.-1*, 241 W. Va. at 693, 827 S.E.2d at 835.[4]

"When the requisite procedure is not followed in an abuse and neglect case, this Court has held that the order resulting from such deviation will be vacated and the case will be remanded for entry of an order that satisfies the procedural requirements[.]" *In re Emily G.*, 224 W. Va. 390, 396, 686 S.E.2d 41, 47 (2009) (per curiam). Because we find that the circuit court failed to follow the requisite procedure, we vacate the circuit court's dispositional order and remand this case to the circuit court for A.G.-2 to receive, after due notice, an adjudicatory hearing pursuant to West Virginia Code § 49-4-601. We also direct the circuit court to conduct the adjudicatory hearing expeditiously and direct the Clerk of this Court to issue the mandate in this matter contemporaneously with this opinion.

## IV. CONCLUSION

Based on the foregoing, we vacate the circuit court's June 29, 2021 dispositional order, and we remand this case to the circuit court for further proceedings consistent with this opinion.

Vacated and remanded with directions.

---

[4] This is not to say, however, that a disposition hearing cannot follow immediately after the adjudication hearing in appropriate cases. *See* W. Va. R. P. Child Ab. & Negl. P. 32(b) [eff. 2016] (authorizing accelerated disposition hearing). However, the facts of this case do not meet the requirements of Rule 32.

11