**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**November 4, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **H.B., L.M., K.C., and L.C.**

**No. 20-0178** (Ohio County 19-CJA-74, 19-CJA-75, 19-CJA-76, and 19-CJA-77)

**MEMORANDUM DECISION**

Petitioner Father J.M., by counsel Joshua J. Norman, appeals the Circuit Court of Ohio County's January 22, 2020, order terminating his parental and custodial rights to H.B., L.M., K.C., and L.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Mark D. Panepinto, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his right to a meaningful opportunity to be heard, finding aggravated circumstances applied, denying him an improvement period, finding that there was no reasonable likelihood he could substantially correct the conditions of abuse and neglect, and terminating his parental and custodial rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner abused and neglected the children.[2] At the time, the children resided with their mother, their

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner is the biological father of L.M. only, but claims to be a psychological parent of the remaining children. According to the record, all the children resided with petitioner at times and call him "dad." Although the circuit court did not make any finding as to whether petitioner

(continued . . . )

1

maternal grandmother, and the grandmother's boyfriend, D.H. According to the DHHR, petitioner also resided at the home occasionally. The petition set forth information from a referral alleging that D.H. would make his grandson, L.H., who is not at issue in this appeal, smoke marijuana with the mother, the grandmother, and other children. The referral also alleged that D.H. would force his grandson and L.M. to disrobe and engage in sexual intercourse with one another. During a Child Protective Services ("CPS") investigation into D.H.'s abuse of his grandson, the grandson confirmed these allegations, in addition to disclosing that D.H. would handcuff and restrain him in a cage at times.

CPS continued to investigate the matter and discovered that petitioner had previously admitted knowledge of D.H.'s sexual abuse of L.M. and H.B. Specifically, two witnesses indicated that petitioner previously asked to move himself, the mother, and the children into the witnesses' home because of the sexual abuse. Additionally, the petition alleged that petitioner "admitted to CPS that he was aware that [D.H.] was sexually abusing [the children]." Specifically, petitioner described an incident in which he came to the home and found L.M. locked in her room, terrified. The child disclosed that D.H. attempted to have her perform fellatio on him, at which point she locked herself in her room. According to petitioner, the child's room contained bowls of feces and urine that the child used to relieve herself because of her fear of leaving the room. Petitioner further admitted that two of the children confided in him and the mother about the abuse, but that neither parent reported the abuse or confronted D.H. Petitioner further corroborated L.H.'s reports of being confined, describing having seen the child restrained in handcuffs and a dog cage. Again, petitioner failed to obtain any help for the child. Finally, the petition alleged that the conditions in the home were deplorable, the home at times lacked appropriate utilities, and the parents provided the children with insufficient food. At the time the children were removed, the two youngest children were infected with lice, one child had ringworm, and another was behind on immunizations. Based on these conditions, the DHHR alleged that petitioner abused and neglected the children. Following the petition's filing, petitioner waived his preliminary hearing.

Thereafter, petitioner filed a motion for a post-adjudicatory improvement period. In opposition to this motion, the DHHR argued that petitioner previously admitted that he was aware of the sexual abuse in the home, although the DHHR had been informed that petitioner recanted that statement. According to the DHHR, petitioner's recantation was not in the children's best interest "and show[ed] that he is only motivated by protecting himself and [the mother]." Further, despite petitioner's recantation, the DHHR alleged that he "claims to have this incredible fear of [D.H.], yet he allowed his children to be exposed to [D.H.]." The DHHR further alleged that petitioner tested positive for various controlled substances during several drug screens and that "[h]e still cannot place his child's interest before his own."

In August of 2019, the circuit court held an adjudicatory hearing. Following the presentation of the evidence, the circuit court adjudicated petitioner as an abusing and neglecting parent. The following month, the circuit court held a hearing on petitioner's motion for a post-

should enjoy status as a psychological parent of the other children, it nonetheless terminated petitioner's parental and custodial rights "to his child [L.M.] and the other children, [H.B., L.C.] and [K.C.]." Accordingly, we will address the circuit court's actions as they relate to all of the children below, not just petitioner's lone biological child.

2

adjudicatory improvement period. Based on the evidence, the circuit court found that petitioner previously admitted to the DHHR that he and the mother knew of the sexual abuse in the home, although petitioner later recanted this statement. The circuit court also found that petitioner "reported seeing [D.H.] keep [his grandson] in a dog cage." Accordingly, the circuit court found that petitioner failed to protect the children. Further, the circuit court noted petitioner's repeated positive screens when he submitted to drug testing. As such, the circuit court found that an improvement period would be futile and denied the same.[3]

Following dispositional hearings in November and December of 2019, the circuit court made detailed findings regarding petitioner's inability to correct the conditions of abuse and neglect. The court found that petitioner participated in drug screens from June of 2019 to September of 2019, during which time "he was positive for THC every time" and also tested positive for oxycodone and opiates on a few occasions. According to the record, petitioner admitted that he did not have a prescription for the oxycodone and opiates. Further, petitioner ceased his compliance with drug screens following the earlier denial of his motion for an improvement period. The circuit court further found that petitioner participated in only five supervised visits with L.M. Petitioner was offered transportation to the visits but elected to drive himself. Despite the offer of transportation, petitioner testified that he could not visit the child more frequently "because it costs too much money for gas to get to the visits." Finally, one of petitioner's service providers testified that petitioner had not fully acknowledged his abuse and neglect of the children, having repeatedly denied any knowledge of the abuse D.H. perpetrated despite evidence to the contrary.

Based on this evidence, the circuit court found that petitioner failed to demonstrate that he was likely to fully participate in an improvement period and that petitioner's "protective capacities are so severely compromised and/or non-existent . . . as to render any . . . improvement period . . . futile." Further, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect given that he repeatedly or seriously injured the children physically or emotionally and exposed them to sexual abuse. Because petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect on his own or with help, the court found that the children's welfare and best interests required termination of his parental and custodial rights. As such, the court denied petitioner's request for a post-dispositional improvement period and terminated his parental and custodial rights to the children.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

---

[3]Petitioner later filed a motion to reconsider the denial of his motion for an improvement period, which the circuit court treated as a motion for a post-dispositional improvement period.

[4]All the children's parents' parental and custodial rights were either terminated or voluntarily relinquished below. H.B. has reached the age of majority. The permanency plan for the remaining children is to be adopted in a single foster home.

3

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first alleges that the circuit court violated his due process rights by denying him the opportunity to be heard at adjudication. We find, however, that petitioner waived this issue by failing to object below. In support of this assignment of error, petitioner cites to a brief exchange with the circuit court as follows:

THE COURT: All right. Do you have any witnesses?

[PETITIONER'S COUNSEL]: I'm contemplating.

THE COURT: I will tell you that I think the State has pretty clearly met its burden. I've got enough evidence. You can put your client on. I'm not sure what he's going to say that's going to make me change my mind, though.

[PETITIONER'S COUNSEL]: That's what I was going to do.

THE COURT: So I'm going to find that there is clear and convincing evidence of abuse and neglect in this case against each of the three remaining [parents].

Petitioner argues that this limited exchange with the circuit court constituted a violation of his right to be heard under West Virginia Code § 49-4-601(h), which provides, in relevant part, that "[i]n any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." We find that the record does not support petitioner's assertion that the circuit court violated this right. In fact, the circuit court specifically asked petitioner's counsel if he desired to present any witnesses, at which point counsel indicated that he was unsure whether he intended to do so. Further, while it is true that the circuit court indicated that it believed the State had satisfied its burden of proof for adjudication, it nonetheless told counsel that he could call petitioner as a witness. Instead of affirmatively informing the court of a desire to present any witnesses, including petitioner, counsel permitted the circuit court to proceed to a finding as to adjudication without raising any objection.

In support of his argument, petitioner relies heavily on our prior decision of *In re T.S.*, 241 W. Va. 559, 827 S.E.2d 29 (2019). That case, however, is easily distinguishable from the instant

matter because the circuit court in *T.S.* unequivocally denied the father the opportunity to present witnesses or testify on his own behalf. *Id*. at 564, 827 S.E.2d at 34. Specifically, the circuit court in that matter refused to permit the father to call a CASA representative as a witness and, when the father's counsel indicated that the father wished to testify, the court asked counsel what the substance of that testimony would be and then converted counsel's statement into a proffer. *Id*. at 562, 827 S.E.2d at 32. Here, the circuit court took no such affirmative actions to deny petitioner his rights. On the contrary, the circuit court asked petitioner's counsel if he wished to present any witnesses, to which counsel responded with uncertainty. After the circuit court voiced its understanding of the evidence as already presented, it informed counsel that he could call petitioner as a witness, which counsel failed to do. As such, petitioner's reliance on *T.S.* is misplaced.

Petitioner is correct that the applicable statutes governing abuse and neglect proceedings "and the Due Process Clauses of the West Virginia and United States Constitutions prohibit a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of his child, without notice and the opportunity for a meaningful hearing." Syl. Pt. 2, in part, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973). What petitioner fails to recognize, however, is that he was afforded this meaningful opportunity to be heard, as the record shows that he and his counsel participated in a lengthy adjudicatory hearing that resulted in over 250 pages of transcript in the appendix record on appeal and reveals counsel's extensive cross-examination of several witnesses. That petitioner waived his right to call witnesses or otherwise testify on his own behalf does not constitute a violation of his right to be heard, and, therefore, he is entitled to no relief in this regard.[5]

Petitioner next argues that the circuit court erred in finding that aggravated circumstances existed in this matter, thereby absolving the DHHR of making reasonable efforts to preserve the family. According to petitioner, the evidence established that D.H. subjected the children to sexual abuse, not petitioner, and that a finding of aggravated circumstances against him was therefore inappropriate. We find, however, that petitioner's argument is unavailing.

According to West Virginia Code § 49-4-604(c)(7)(A),

---

[5]In support of this assignment of error, petitioner further argues that because the circuit court improperly dissuaded him from testifying, his silence at adjudication was also improperly held against him. This Court has made it clear that circuit courts may make such considerations. Syl. Pt. 2, *W. Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996) ("Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her . . . , a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability."). However, petitioner points to no instance where the circuit court used petitioner's silence as affirmative evidence of the allegations against him. Instead, petitioner argues that the DHHR used petitioner's silence against him in opposing his motions for improvement periods. There is simply nothing that would preclude the DHHR from pointing to petitioner's silence as its motivation to oppose an improvement period. Further, because we find that the circuit court offered petitioner the opportunity to testify, as set forth above, any argument predicated on the allegation that petitioner was denied a meaningful opportunity to exercise this right must also fail.

the department is not required to make reasonable efforts to preserve the family if the court determines . . . [t]he parent has subjected the child, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent to aggravated circumstances which include, but are not limited to, abandonment, torture, chronic abuse, and sexual abuse.

Petitioner argues that he was unaware of the abuse until "a week or two before DHHR took the children." After being informed of the sexual abuse, petitioner argues that "[n]o abuse/neglect was alleged to have occurred" between the date L.M. notified him of the sexual abuse and the children's removal. What petitioner fails to acknowledge, however, is that his failure to take any steps to protect L.M. from sexual abuse is egregious, given that the child made detailed disclosures that D.H. was attempting to force her to perform fellatio on him. Petitioner interprets the facts surrounding L.M.'s disclosure to him and his reaction as appropriate when, in actuality, petitioner left the child in the home with her abuser without taking any action to protect her.

For purposes of analyzing petitioner's argument, it is sufficient to accept his version of the facts as true, despite the fact that conflicting evidence exists as to when, exactly, petitioner was made aware of L.M.'s abuse and the extent of that abuse. Taken at face value, petitioner asserts that "he viewed a text from his daughter, L.M., stating that [D.H.] demanded that she 'suck his dick' and had placed cameras in bedrooms and bathrooms to watch the children change, shower, etc." By his own admission, petitioner went to the home "and found his daughter locked in her room due to fear of D.H." Petitioner then alleges that he searched the home for cameras, found none, and failed to contact law enforcement "because he did not know what to do." This constitutes the entirety of petitioner's response to the child's disclosure. By his own admission, petitioner left the child in the home with someone who was attempting to sexually abuse her. Throughout his brief, petitioner attempts to minimize his conduct by asserting that this was "strictly a failure to protect case" and that D.H. alone was responsible for the aggravated circumstances to which the children were subjected. We find, however, that these attempts to absolve himself of responsibility for subjecting the children to the potential for further abuse after being made aware that it was ongoing are insufficient to entitle petitioner to relief. Because the record shows that petitioner subjected L.M. to continued exposure to D.H., her sexual abuser, it is clear that a finding of aggravated circumstances was appropriate. This is especially true when considering that the Legislature plainly stated in West Virginia Code § 49-4-604(c)(7)(A) that aggravated circumstances "are not limited to" the listed circumstances.

In support of this assignment of error, petitioner also argues that the circuit court did not make a finding of aggravated circumstances until the dispositional hearing, while the DHHR treated the case as one of aggravated circumstances throughout. Petitioner argues that the circuit court's finding was an attempt to "cover for both DHHR and the State on their failures" and that it was made "despite no evidence in support of said circumstances." Given the analysis above detailing the ample evidence of aggravated circumstances, it is clear that petitioner cannot succeed in his attempts to predicate other arguments upon a lack of sufficient evidence and, thus, is entitled to no relief. Further, petitioner's assertion that the DHHR treated his case as one of aggravated circumstances throughout by failing to provide him with any services is belied by the record, which shows that the DHHR offered petitioner supervised visitation, transportation for the visits, and

drug screens. Petitioner refused transportation services, instead opting to drive himself to visits, which he later claimed limited his ability to visit with L.M. because of the cost. In short, the DHHR did provide petitioner limited services during the proceedings, despite the circuit court's eventual finding of aggravated circumstances that absolved the DHHR of making those efforts. As such, petitioner cannot establish error.

Petitioner further relies on his assertion that a finding of aggravated circumstances was inappropriate as a basis for his argument that the circuit court erred in finding that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future. Again, however, we note that the finding of aggravated circumstances was fully supported by the record and, accordingly, petitioner is entitled to no relief on this basis. Further, petitioner is incorrect that the evidence did not demonstrate that there was no reasonable likelihood that he could correct the conditions of abuse and neglect. West Virginia Code § 49-4-604(d) provides as follows:

> As used in this section, "No reasonable likelihood that conditions of neglect or abuse can be substantially corrected" means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help. Those conditions exist in the following circumstances, which are not exclusive[.]

The statute then goes on, over several subsections, to set forth situations in which it can be assumed that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future. On appeal, petitioner focuses only on his assertion that none of these various situations apply to him, again ignoring that the Legislature has made this list non-exclusive.[6]

Here, the evidence clearly shows that petitioner demonstrated an inadequate capacity to solve the problems on his own or with help. As the circuit court found, petitioner showed a failure to fully acknowledge the conditions of abuse and neglect at issue by his repeated denials of knowledge of the abuse D.H. perpetrated. The circuit court heard testimony that petitioner admitted to observing egregious evidence of the abuse in the home, including having seen D.H.'s grandson restrained inside an animal crate and witnessing L.M.'s fear of D.H. result in the child urinating and defecating in containers in her locked room rather than exposing herself to his continued sexual abuse. Petitioner recanted these disclosures and minimized his responsibility for the children's safety, which he continues to do on appeal by arguing that his decision to leave L.M. in the home after he was made aware of her sexual abuse was appropriate because there is no evidence that she was again sexually abused after he failed to take steps to protect her.

Based on this evidence, the circuit court specifically found that petitioner's ability to protect the children was nonexistent, which is in keeping with this Court's holdings regarding the

---

[6]Petitioner is correct that the circuit court cited to several of these subsections to support its finding that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future. However, given the analysis undertaken above, it is unnecessary to address the application of these subsections to the matter on appeal.

impact that a failure to acknowledge issues of abuse and neglect has on the potential for remediation. This Court has long held that "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem . . . results in making the problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given petitioner's refusal to acknowledge the problem, it is clear that there was sufficient evidence upon which to base a finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. It should also be noted that petitioner repeatedly tested positive for controlled substances throughout the proceedings, further evidencing his refusal to put forth effort toward reunification. While petitioner cites to the circuit court's comments that it would not terminate his rights based solely on drug screens showing THC, petitioner ignores the fact that he also tested positive for other substances and that his continued abuse of THC was not ruled on in isolation but, instead, was viewed in conjunction with his other failures below. Accordingly, petitioner is entitled to no relief.

Finally, petitioner argues that both the circuit court and the guardian failed to consider L.M.'s wishes to be returned to his care. The record, however, does not support this contention. While it may be true that the guardian's report omits petitioner by indicating L.M.'s desire to be returned to the mother only, petitioner nonetheless cites to various points in the record when the circuit court was presented with the child's desire to be reunited with him. Given that petitioner concedes that the guardian made this information known to the circuit court, we find, under the specific circumstances of this matter, that it is inconsequential that the information was not included in the guardian's report.

Petitioner further argues that the circuit court erred in failing to hear from a licensed mental health care provider as to the psychological impact termination of his parental and custodial rights would have on L.M. In support of his argument, petitioner relies on *In re Jessica G.*, 226 W. Va. 17, 697 S.E.2d 53 (2010), wherein this Court indicated that it was "particularly concerned with the complete absence of any testimony at the dispositional hearing by a licensed mental health care provider as to the possible psychological consequences to Jessica G. by terminating her father's parental rights." *Id.* at 22, 697 S.E.2d at 58. Petitioner relies on this dictum to seemingly assert that testimony from such a health care provider is necessary in all cases, which is simply not accurate. In *Jessica G.*, there was extensive evidence about the child's strong emotional bond with the father. Here, petitioner simply asserts that he had a strong emotional bond with the children without any corroboration. Indeed, the two pages of the record to which petitioner cites in support of this assertion do not contain any evidence of a strong or substantial bond. Instead, one page indicates that L.M. said petitioner protected the children, while the other page indicates that a supervised visitation provider did not "see[] any inappropriate behavior between [petitioner] and the kids" and that petitioner "treats all of the kids, roughly, the same." This is far from the evidence in *Jessica G.* that resulted in the circuit court finding that there was a "strong bond between Jessica G." and the father therein. As such, we find that it was unnecessary for the court to hear evidence from a licensed mental health care provider, especially considering the egregious nature of petitioner's conduct.

Having established that L.M.'s preference for being returned to petitioner was presented to the circuit court, we find that there is nothing in the record to indicate that the court did not properly

consider this information. According to West Virginia Code § 49-4-604(c)(6)(C), "the court shall give consideration to the wishes of a child [fourteen] years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." This statute does not, however, bind a circuit court to follow such wishes, especially in circumstances such as those presented below where a parent has demonstrated a total inability to protect the children. Based on the circuit court's extensive findings regarding petitioner's inability to correct the conditions of abuse and neglect and that termination of his parental and custodial rights was necessary for the children's welfare, we find no error in this regard.

Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 22, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: November 4, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

9